# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 19, 1918.

EDWARD A. WALKER
VS.
SOPHIE B. WALKER
AND CROSS-BILL.

*Arthur W. Machen, Jr.*, and *Raymond S. Williams* for Edward A. Walker.

*Randolph Barton, Jr.*, and *George A. Finch* for Sophie B. Walker.

SOPER, J. (Orally)—

I want to thank counsel for their very careful preparation and trial of this case, which has been of very great assistance to the court. I am quite

certain that counsel on both sides have endeavored to do their utmost to aid the court and have acted entirely within their professional rights and duties.

On the main question in this case— that is, the question that has consumed most of the argument—the graver charge, if I may speak of it in the fashion in which counsel for Mrs. Walker has spoken of it—as to whether or not the evidence is sufficient to convince the court, I may say that it does not convince the court that it should grant a divorce a vinculo in this case.

The case has stretched over a considerable length ·of time, and properly so—unavoidably so—and it has given the court ample opportunity for reflection.

I have listened today and yesterday to two very exceedingly able—I may say exceedingly powerful—arguments, addressed to this point. I have the responsibility, of course, of the court— the duty of making the decision—and I can only say that after listening to these arguments, reflecting upon them, and having had the opportunity to think about the evidence, that the evidence does not convince me that the charge is sustained.

I do not know that it is either my duty to praise or condemn. I do not mean to be understood as speaking in commendation of the relations between Mrs. Walker and some of the men friends that she undertook to have, but there is a vast difference between evidence which would enable us to say that a woman was indiscreet, or more or less oblivious of appearances, or, perhaps, of duties to her husband, and evidence that would enable us to say a criminal act had been committed.

I think the same thing appealed to counsel for Mr. Walker; I think the same thing appealed to Mr. Walker himself, because it is perfectly clear that ever since April 15, 1917, now a year ago, Mr. Walker has had all of the positive evidence in his possession that he has today on this point. He had the evidence in his diary; he had the evidence of the detectives; he had the evidence of his own sight. He believed then that he had evidence that the episode at the apartment took place, and yet he was not willing, and his counsel were not willing to advise him to say that it was sufficiently potent and forceful to permit the allega-

tion of adultery. Now, the only thing that has been added to that, absolutely the only thing, is the question of denial.

I understand counsel to feel that the deliberate denial made of that episode is sufficient to carry them across the mark, and to make them believe something that before they did not believe. For myself I must say it does not have that effect.

I do, however, believe that the evidence in this case justified a divorce a mensa on the suit of Mr. Walker. I feel there has been an abandonment by Mrs. Walker and that there was no sufficient justification for it.

I think it is only fair that I should say, before leaving the other branch of the case, although it applies as well to this, that I do not find in the evidence any reason to conclude that there has been any attempt on Mr. Walker's part to plan or scheme a case against his wife. I think he has acted in entire good faith in the matter, and that he has endeavored to tell the truth as he saw it.

The statement of the defense to the suit a mensa is that Mr. Walker's conduct was not such as to warrant the defendant to continue to live with him. I can not reach that conclusion.

It is perfectly true that Mr. Walker did unusual things in the way of employing detectives, in the way of keeping this watch and in the way of holding aloof, at least during the latter part of their living together, from his wife, but it must be confessed that there were certain things which serve at least as some explanation of why he acted in that way.

It is not my duty, or my privilege, or my desire, to preach a sermon on the proper conduct of married people. I do not attempt to do so. I can only say this, however, that everybody knows how quickly any married woman is criticized publicly if she attempts to associate with men as if she were unmarried, if she attempts to go with men of various sorts—not only men, men and women—particularly if they happen to be men and women whose reputations are not of the best.

Now, if those things are so understood amongst us all, it is not at all surprising that the husband himself, when he became suspicious, was greatly impressed and felt it necessary to

take unusual precautions. Added to that is the undoubted fact that whatever may have been Mr. Walker's feeling for his wife, after he discovered some of those things which excited his suspicion, her feeling toward him was one of complete and utter disgust. She did not sufficiently care for him when she married him, and, as I understand her own testimony, she well-nigh despised him and was disgusted with him at the very time when she was doing the things which caused him to take the unusual precaution.

I think she has, therefore, no claim to say that she was forced to leave him. The evidence convinces me that if, at any time, she had been willing to have abandoned the people of whom he complained, there would have been peace and harmony in the household.

I feel then, gentlemen, that I should grant the application of Mr. Walker for a divorce a mensa, and that I should dismiss the cross-bill of Mrs. Walker.